UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------X
NWL HOLDINGS, INC. (d/b/a NATIONAL
WHOLESALE LIQUIDATORS),

                                  Plaintiff,         **MEMORANDUM AND ORDER**
                                                                05-CV-3499 (DRH)(WDW)

    v.

DISCOVER PROPERTY & CASUALTY
INSURANCE COMPANY,

                                  Defendant.

----------------------------------------------------------------X
**APPEARANCES:**

**For the Plaintiff:**
**ABRAMS, GORELICK, FRIEDMAN & JACOBSON, P.C.**
115 Broadway – 11th Floor
New York, New York 10006
By: Michael E. Gorelick, Esq.

**For the Defendant:**
**ARMIENTI, DEBELLIS & WHITEN, LLP**
44 Wall Street, 18th Floor
New York, New York 10005
By: Vanessa M. Corchia, Esq.

**HURLEY, Senior District Judge:**

        Plaintiff NWL Holdings, Inc. (d/b/a National Wholesale Liquidators) ("Plaintiff")

moves for an Order, pursuant to Federal Rule of Civil Procedure ("Rule") 56, (1) declaring that

defendant Discover Property & Casualty Insurance Company ("Defendant") was obligated to

defend Plaintiff with respect to claims asserted against it in a state court action; and (2) granting

judgment to Plaintiff in the sum of $131,652.79 to reimburse it for the expenses and attorneys'

fees incurred in defending the state court action. For the reasons that follow, the Court grants

Plaintiff's motion for a declaratory judgment and the matter is referred to Magistrate Judge

William D. Wall for a report and recommendation as to the appropriate amount of fees to be awarded Plaintiff.

## BACKGROUND

The material facts, drawn from the Complaint and the parties' Local 56.1 Statements, are undisputed unless otherwise noted.

Defendant issued a policy of Commercial General Liability Insurance to Plaintiff, effective May 11, 2003. In the policy, Defendant agreed to indemnify and defend Plaintiff against claims for "bodily injury" caused by an "occurrence" as defined in the policy. Occurrence is defined as "an accident including continuous or repeated exposure to substantially the same general harmful conditions." (Pl.'s Ex. 3, Policy at 14.) The policy contained an exclusion from coverage for "Expected or Intended Injury" which provides that the "Bodily Injury . . . expected or intended from the standpoint of the insured is not covered." (*Id.* at 2.)

In or around January 2004, Nawaz Malik ("Malik"), a former employee of Plaintiff, commenced an action in the New York State Supreme Court, Queens County, against Plaintiff and its former employee Muhammad Akram ("Akram"). Malik alleged that he was sexually assaulted by Akram at work and asserted five causes of action, viz. (1) sexual harassment under state law; (2) retaliation based upon his complaints of sexual harassment; (3) intentional infliction of emotional distress; (4) assault; and (5) battery. Plaintiff notified Defendant of the state court action and according to Defendant, it sent Plaintiff a letter, dated February 17, 2004, disclaiming coverage under the policy. Plaintiff denies receipt of this letter.

Thereafter, Malik, through different counsel, commenced a second lawsuit against Plaintiff in April 2004. This action contained the same causes of action as the first lawsuit but

added claims for negligent supervision, hiring and retention. On July 8, 2004, Defendant's coverage counsel issued a letter to Plaintiff disclaiming coverage for all of the claims in the second action except for the negligent hiring, retention and supervision claim. (*See* Pl.'s Ex. 9.) According to Plaintiff, on an undisclosed date, the second action was withdrawn and voluntarily discontinued.

According to Plaintiff, the first Malik action was settled for $299,999 and Plaintiff has paid this amount to Malik. Plaintiff contends that its expenditures and attorneys' fees with regard to the first Malik action total $131,652.79.

Plaintiff now moves for an Order declaring that Defendant was obligated to defend it in the first Malik action and seeks reimbursement for the expenses and fees it incurred in defending that action. Plaintiff does not seek indemnification for the amount of monies paid in settlement.

## *DISCUSSION*

### I. *Summary Judgment Standard*

Summary judgment pursuant to Federal Rule of Civil Procedure 56 is only appropriate where admissible evidence in the form of affidavits, deposition transcripts, or other documentation demonstrates the absence of a genuine issue of material fact, and one party's entitlement to judgment as a matter of law. *See Viola v. Philips Med. Sys. of N. Am.*, 42 F.3d 712, 716 (2d Cir. 1994). The relevant governing law in each case determines which facts are material; "only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). No genuinely triable factual issue exists when the moving party

3

demonstrates, on the basis of the pleadings and submitted evidence, and after drawing all inferences and resolving all ambiguities in favor of the non-movant, that no rational jury could find in the non-movant's favor. *Chertkova v. Conn. Gen'l Life Ins. Co.*, 92 F.3d 81, 86 (2d Cir. 1996) (citing Fed. R. Civ. P. 56(c)).

To defeat a summary judgment motion properly supported by affidavits, depositions, or other documentation, the non-movant must offer similar materials setting forth specific facts that show that there *is* a genuine issue of material fact to be tried. *Rule v. Brine, Inc.*, 85 F.3d 1002, 1011 (2d Cir. 1996). The non-movant must present more than a "scintilla of evidence," *Delaware & Hudson Ry. Co. v. Consolidated Rail Corp.*, 902 F.2d 174, 178 (2d Cir. 1990) (quoting *Anderson*, 477 U.S. at 252), or "some metaphysical doubt as to the material facts," *Aslanidis v. U.S. Lines, Inc.*, 7 F.3d 1067, 1072 (2d Cir. 1993) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986)), and cannot rely on the allegations in his or her pleadings, conclusory statements, or on "mere assertions that affidavits supporting the motion are not credible." *Gottlieb v. County of Orange*, 84 F.3d 511, 518 (2d Cir. 1996) (internal citations omitted).

The district court considering a summary judgment motion must also be "mindful of the underlying standards and burdens of proof," *Pickett v. RTS Helicopter*, 128 F.3d 925, 928 (5th Cir. 1997) (citing *Anderson*, 477 U.S. at 252), because the evidentiary burdens that the respective parties will bear at trial guide district courts in their determination of summary judgment motions. *Brady v. Town of Colchester*, 863 F.2d 205, 211 (2d Cir. 1988). Where the non-moving party will bear the ultimate burden of proof on an issue at trial, the moving party's burden under Rule 56 will be satisfied if he can point to an absence of evidence to support an

essential element of the non-movant's claim. *Id.* at 210-11. Where a movant without the underlying burden of proof offers evidence that the non-movant has failed to establish her claim, the burden shifts to the non-movant to offer "persuasive evidence that [her] claim is not 'implausible.' " *Brady*, 863 F.2d at 211 (citing *Matsushita*, 475 U.S. at 587).

## II.     *Defendant Had a Duty to Defend Plaintiff in the First Malik Action*

Under New York law, an insurance company's duty to defend is very broad: "The duty of an insurer to defend its insured arises whenever the allegations within the four corners of the underlying complaint potentially give rise to a covered claim, or where the insurer 'has actual knowledge of facts establishing a reasonable possibility of coverage.'"[1] *Frontier Insulation Contractors, Inc. v. Merchants Mut. Ins.*, 91 N.Y.2d 169, 175 (1997) (quoting *Fitzpatrick v. Am. Honda Motor Co.*, 78 N.Y.2d 61, 65-67 (1997)). "An insurer is relieved of the duty to defend only if 'there is no possible factual or legal basis on which [the insurer] might eventually be held to be obligated to indemnify [the insured] under any provision of the insurance policy.'" *Allianz Ins. Co. v. Lerner*, 416 F.3d 109, 115 (2d Cir. 2005) (quoting *Servidone Constr. Corp. v. Sec. Ins. Co.*, 64 N.Y.2d 419, 424 (1985)). "If any of the claims against the insured arguably arise from the covered events, the insurer is required to defend the entire action." *Frontier Insulation*, 91 N.Y.2d at 175.

Here, Plaintiff argues that the sexual assault alleged in the first Malik action constitutes a covered claim based upon the New York Court of Appeals decision in *RJC Realty Holding Corp. v. Republic Franklin Ins. Co.*, 2 N.Y.3d 158 (2004). Construing an insurance

---

[1] The duty to defend is distinct from, and far broader, than the duty to indemnify, which is determined by the actual basis for the insured's liability to a third person. *See, e.g.*, *Servidone Constr. Corp. v. Sec. Ins. Co.*, 64 N.Y.2d 419, 424 (1985).

policy which contained virtually identical language to the policy at issue in this action, the *RJC Realty* court held that a sexual assault committed by an employee is an "accident" and therefore an "occurrence" within the meaning of the policy because (1) the employer did not intend or expect the sexual assault; and (2) the employee's intention in committing the act could not be attributed to his employer under the doctrine of respondeat superior because the employee was not acting within the scope of his employment. *Id.* at 163-65; *see generally Judith M. v. Sisters of Charity Hosp.*, 93 N.Y.2d 932, 933 (1999) (holding that employee's alleged sexual abuse of patient constituted "departure from his duties for solely personal motives unrelated to the furtherance of the [employer's] business" and thus did not provide basis for recovery against hospital under doctrine of respondeat superior).

Although Plaintiff is correct that pursuant to *RJC Realty*, the sexual assault alleged in the first Malik action would constitute a covered event under the policy, that does not end the Court' analysis. In *RJC Realty*, the claims asserted in the underlying action, and the claims the insurer was held obligated to defend and indemnify, were claims for negligent hiring, supervision and retention. Under the present facts, the first Malik complaint did not assert claims for negligent hiring, supervision or retention. Instead it sought, inter alia, to hold Plaintiff vicariously liable under the theory of respondeat superior for assault and battery.[2] As noted above, however, and the parties do not dispute, an employer cannot be held vicariously liable for the sexual assault or battery committed by an employee. Thus, because an insurer has no

---

[2] The parties do not dispute that the first three causes of action asserted in the first Malik action would not be covered by the policy. However, as noted above, Defendant would have an obligation to defend the entire action if *any* of the claims asserted therein had any possible legal basis. *See Frontier Insulation*, 91 N.Y.2d at 175.

6

obligation to defend an insured if there is no possible legal basis upon which the insurer might eventually be required to indemnify the insured, at first blush, it would seem as if Defendant had no obligation to defend Plaintiff in the first Malik action as the complaint had no legal viability. *See Allianz Ins. Co.*, 416 F.3d at 115.

In *Fitzpatrick*, however, the New York Court of Appeals broadened protection for insureds by holding that courts are required to look beyond the four corners of the complaint in determining whether there is any potentially covered occurrence under the policy. 78 N.Y.2d at 67. In that case, the question presented was whether there is a duty to defend "where the pleadings do not allege a covered occurrence but the insurer has actual knowledge of facts demonstrating that the lawsuit does involve such an occurrence." *Id.* at 63. *Fitzpatrick* held that under such circumstances there was a duty to defend.

The court began its analysis by reviewing the well-established "four-corners of the complaint" rule which provides that an insurer has a duty to defend "whenever the allegations in a complaint state a cause of action that gives rise to the reasonable possibility of recovery under the policy." *Id.* at 65. The rationale underlying this rule is that the duty to defend is broader than the duty to indemnify, so that if the complaint alleges a covered occurrence, there is a duty to defend even though extrinsic evidence shows that the occurrence is outside the policy coverage. *Id.* In *Fitzpatrick*, the insurer attempted to argue that the converse was also true, i.e., that the complaint allegations were the *sole* consideration in determining an insurer's obligation to defend. *Id.* In rejecting this position, the Court of Appeals reasoned that where the underlying complaint fails to allege a covered occurrence yet the insurer has actual knowledge that the action involves a covered event, "wooden application of the 'four corners of

7

the complaint' rule would render the duty to defend narrower than the duty to indemnify -- clearly an unacceptable result." *Id.* at 66. Because an insurer should not be permitted to "use a third party's pleadings as a shield to avoid its contractual duty to defend its insured," *id.* at 63, the *Fitzpatrick* court held that an insurer is required to provide a defense whenever "it has actual knowledge of facts establishing a reasonable possibility of coverage." *Id.* at 67. Moreover, the court held that an insurer "cannot ignore the facts made known to it by its insured" when assessing its duty to defend. *Id.* at 70.

Based on the court's holding in *Fitzpatrick*, Plaintiff presents two arguments as to why Defendant had a duty to defend Plaintiff in the first Malik action. First, Plaintiff asserts that a liberal construction of the first Malik complaint reveals allegations which support a claim of negligent supervision. Second, Plaintiff contends that notwithstanding the complaint allegations, Defendant had knowledge of facts establishing a reasonable possibility of coverage. Because the Court agrees with Plaintiff on both points, the Court finds that Defendant had a duty to defend.

### A. *The Allegations of the First Malik Complaint*

The fourth and fifth causes of action in the first Malik complaint allege assault and battery based upon Akram's actions and seek to hold Plaintiff vicariously liable therefor. Plaintiff argues that the court should not focus exclusively on the "designation of the causes of action in the underlying action" but rather, should inquire into "the facts upon which the [c]omplaint is based." (Pl.'s Reply at 5.) Thus, although Plaintiff concedes that the underlying complaint "frames the issue as one of respondeat superior, the facts stated in the [c]omplaint clearly support a claim for negligent supervision and retention." (*Id.* at 3 (emphasis omitted).) In support of this argument, Plaintiff relies, inter alia, on paragraphs 5 through 10 of the first

8

Malik complaint. These allegations are reviewed below.

Malik alleged that after being hired by the store manager, he began his employment with Plaintiff in April 2003. (Pl.'s Ex. 1 ¶¶ 5-6.) On October 4, 2003, he was transferred to Plaintiff's store. (*Id.* ¶ 7.) Over the course of the next few days, Akram made several unwanted sexual advances toward him. (*Id.* ¶¶ 8-9.) On October 7, 2003, Malik complained to the store manager about Akram's sexual harassment and the manager told Plaintiff that he would "take care of it, but he never did." (*Id.* ¶ 10.) A few days later, on October 11, 2003, Malik was sexually assaulted by Akram. (*Id.* ¶¶ 12-18.)

Plaintiff points out that the crux of a negligent supervision and/or retention claim is that the employer knew or should have known of the employee's propensity for the conduct which caused the injury. *See Ehrens v. Lutheran Church*, 385 F.3d 232, 235 (2d Cir. 2004). Although the first Malik complaint does not specifically denominate negligent supervision as a separate cause of action, Plaintiff argues that the facts alleged therein were sufficient to put Defendant on notice that the complaint could potentially give rise to such a claim. Given the broad nature of the duty to defend, the Court agrees. Malik alleged that he complained to the store manager about Akram's sexual harassment just four days before the alleged sexual assault transpired and that the store manager took no action. These allegations state a claim for negligent supervision. *See Ehrens*, 385 F.3d at 235. Accordingly, the Court finds that the first Malik complaint contains sufficient allegations to arguably fall within the scope of the insurance policy. *See Fitzpatrick,* 78 N.Y.2d at 66 ("[T]he duty to defend exists 'if the complaint contains any facts or allegations which bring the claim even potentially within the protection purchased.'") (quoting Technicon Elecs. Corp. v. Am. Home Assur. Co.*,* 74 N.Y.2d 66, 73

9

(1989).³

### B. *Defendant's Knowledge of Facts Outside the Complaint*

Plaintiff also argues that Defendant had knowledge of facts outside of the complaint establishing a reasonable possibility of coverage. Once again, the Court agrees.

Malik filed his first action in January 2004. As discussed above, this action did not assert a claim for negligent supervision and, as a result, Defendant thereafter disclaimed coverage. In April 2004, through different counsel, Malik filed a second action arising from the same set of facts and circumstances and containing the same causes of action as the first lawsuit, but this time also asserting claims for negligent supervision, hiring and retention. In July 2004, Defendant advised Plaintiff that the policy did not afford coverage for any of the claims asserted in the second action "with the potential exception of the negligent hiring, retention and supervision claim." (Pl.'s Ex. 9.) As a result, Defendant indicated that it would defend Plaintiff with regard to the entirety of the second Malik action. (*Id.*) This action was eventually withdrawn and voluntarily discontinued.

Although the second complaint contained a separately designated cause of action for negligent retention and supervision, the facts and circumstances alleged in the first and the second complaints are the same. Therefore, upon receipt of the complaint in the second Malik action in April 2004, at the latest, Defendant had notice of facts which gave rise to a duty to defend in the first complaint. This is especially true given, as discussed above, that the first

---

³ This finding is further buttressed by the fact that Defendant insurer, presumably aware of the law in this area, had knowledge that the precise scenario alleged in the first Malik action may be sufficient to trigger the insurance company's duty to defend. *See RJC Realty*, 2 N.Y.3d 158 (finding that sexual assault committed by an employee is a covered occurrence within the purview of a policy containing identical language to the policy at issue herein).

action contained allegations relating to a negligent supervision claim.  Moreover, once the second Malik action was withdrawn, Defendant could have easily anticipated that Malik would amend his complaint in the first action to add this cause of action.  Accordingly, the Court finds that Defendant had "actual knowledge of facts establishing a reasonable possibility of coverage," *Fitzpatrick*, 78 N.Y.2d at 67, and was therefore required to defend Plaintiff in the first Malik action.

### III.    *The "Employer's Liability" Exclusion Does Not Apply*

In a last-ditch attempt to defeat summary judgment, Defendant argues that the "Employer's Liability" exclusion in the policy applies.  This exclusion provides that the policy does not cover bodily injury to an employee "arising out of and in the course of: (a) Employment by the insured; or (b) Performing duties related to the conduct of the insured's business."  (*See* Def.'s Mem. at 28; *see also* Pl.'s Ex. 3.)  Defendant argues that the bodily injury to Malik occurred during the course of his employment, as opposed to what Akram did, which was clearly outside the scope of Akram's employment.

Although the injury to Malik may have occurred in the course of his employment, it cannot seriously be argued that it "ar[ose] out of" his employment.  *See Lemon v. N.Y.C. Transit Auth.*, 72 N.Y. 324, 326-27 (1988) ("[O]nly if an injury flows as a natural consequence of the employee's duties can it be said to arise out of the employment."); *see also Scholtzhauer v. C.&L. Lunch Co.*, 233 N.Y. 12, 13 (1922) (murder of employee by co-employee did not arise out of employment "but because the deceased refused to accept [co-employee's] invitation, and his anger by reason thereof").  Accordingly, the Court finds that the "Employer's Liability" exclusion does not apply to this case.

**IV.** *Attorneys' Fees*

Plaintiff seeks an Order directing Defendant to pay it the amount of $131,652.79 as reimbursement for the defense expenses and attorneys' fees incurred by Plaintiff in defending the first Malik action. In support of this application, Plaintiff has submitted copies of invoices received by Plaintiff, together with Plaintiff's checks in payment. Each invoice is accompanied by a statement outlining the services rendered, the total hours expended and the hourly rates applied. In opposing this application, Defendant argues that a hearing is necessary to determine the reasonableness of the fees sought.

Pursuant to New York law, Plaintiff is entitled to recover reasonable attorneys' fees for both defending the underlying state court action and in bringing the instant action based on Defendant's disclaimer. *See, e.g.*, *U.S. Underwriters Ins. Co. v. TNP Trucking Inc.*, 44 F. Supp. 2d 489, 492 (E.D.N.Y. 1999) (citing cases). Here, Plaintiff seeks fees based upon the hours reasonably spent multiplied by the reasonable hourly rate. However, neither party has supplied any authority as to whether the hours spent, or the rates charged, are reasonable. *See, e.g.*, *Cruz v. Local Union Number 3 of the International Brotherhood of Electrical Workers*, 34 F.3d 1148, 1159 (2d Cir. 1994) (fee applicant needs to show that the requested rates are "in line with those rates prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation"). Moreover, although Defendant suggests that the fee application is not reasonable, it proffers no explanation as to why this may be the case. Thus, on this record, the Court is unable to determine the amount of reimbursement to which Plaintiff is entitled. Accordingly, this matter is respectfully referred to Magistrate Judge William D. Wall for a report and recommendation as to the amount of attorneys' fees and expenses to which

Plaintiff is entitled.

## *CONCLUSION*

For the foregoing reasons, Plaintiff's motion for a declaratory judgment is GRANTED and the Court finds that Defendant had a duty to defend Plaintiff in the underlying state court action. Plaintiff's motion for attorneys' fees is also GRANTED to the extent the Court finds that Plaintiff is entitled to recover reasonable attorneys' fees for both defending the underlying state court action and in bringing the instant action. The matter is respectfully referred to Magistrate Judge William D. Wall for a report and recommendation as to the appropriate amount of fees to be awarded.

**SO ORDERED**

Dated: Central Islip, NY
March 30, 2007

/s_____
Denis R. Hurley,
United States District Judge